## Denny McCobb *vs.* Halsey Healy.

Where the principal obligor in a bond to the *United States* for duties gave to the Collector, who took the bond, a draft for the amount; and where a suit had been brought on the bond in the *United States* Court, and also a suit in the name of the collector, upon the draft in a State Court, and the defendant and the collector agreed that there should be judgment by default upon the bond, the seals on which had been torn off by mistake, and that no further proceedings should be had on the draft; and where the judgment on the draft remained unsatisfied, and the collector, who had paid the amount to the *United States*, brought another action on the draft; *it was held*, that it was competent for the plaintiff to repel any presumption, arising from such agreement, that the draft had been paid or cancelled, by proof that the defendant had afterwards admitted that the draft was justly due and unpaid.

Exceptions from the C. C. Pleas, Redington J. presiding.

The action was assumpsit, the writ bearing date *Nov.* 23, 1836, on a draft dated *Jan.* 17, 1830, for $1000, drawn by the defendant on *John Thompson*, payable in *Boston* in 60 days, to the order of *James D. Wheaton*, accepted by *Thompson*, and indorsed by *Wheaton*. With the general issue the statute of limitations was pleaded by brief statement. The execution of the draft, due presentment, demand and notice to charge all the parties, were proved. A witness testified that the draft grew out of a custom-house bond given by *Healy*, the amount of which had been paid to the *United States* by the plaintiff, by whom it had been taken as Collector, and that the bond was cancelled, or the names torn off, when the draft was made. The plaintiff proved, that *Nov.* 22, 1836, in a conversation between the plaintiff and defendant with

McCobb *v.* Healy.

respect to this draft, that *Healy* said, the draft was justly due from him to *McCobb*, and that he would take no advantage of the statute of limitations, and would pay it, if he could. It was stated in defence, that the draft was given for the amount due upon the bond, and that thereupon the bond was cancelled by tearing off the names of the obligors, that suits were brought upon the draft and also upon the bond, and that the plaintiff agreed with the defendant, that the latter should be defaulted upon the bond, and no further proceedings be had upon the draft. The defendant offered a copy of the bond and of a judgment rendered thereon, the writ being dated *Jan.* 23, 1830, in the *U. S. District Court,* in *June,* 1830, and of an execution issued thereon, and of a return on the execution by which it appeared, that the defendant had been arrested on the execution and committed to the jail in *Wiscasset,* in *Sept.* 1830. These were objected to by the plaintiff as irrelevant, but by permission of the Judge were read to the jury. The defendant also offered the copy certified by the clerk, of an agreement as made upon the back of the bond, but the execution was not proved, nor the original produced. The alleged agreement was : " *Thomaston, May* 12, 1830 : I hereby agree to be defaulted in the action *United States* v. me, on the within bond now pending in the District Court, my signature to the within having been torn off by mistake. *Halsey Healey."* The plaintiff objected to the admission of this copy, and the Judge excluded it. The defendant also offered a certified copy from the docket of the clerk of the Court, at *April Term,* 1830, the contents of which are not given. This was excluded by the Judge. All that appears in the exceptions, and the testimony of a witness, in relation to the entry, will be found in the opinion of the Court. The defendant requested the Judge to instruct the jury, that if they were satisfied from the evidence, that the draft was given for the bond, and that an agreement was made to be defaulted on the bond, in consideration that no further proceedings should be had upon the draft, that the action cannot be sustained. The Judge declined thus to instruct the jury, there being no evidence in the case requiring it ; and did instruct them, that if they believed that the draft was given for the bond, then the draft and bond were to be considered as collateral, one to the other, or at least were co-existing securities for the same

debt; that when the one was paid the other could not be enforced; that the commitment of *Healey*, while it continued, precluded the creditor from maintaining a suit against the same defendant even upon a collateral obligation; that if *Healey* had paid said judgment, or was still in jail under the commitment on the execution from the *U. States* Court, the action cannot be maintained; but if the jury were satisfied from the evidence offered them, that *Healy* had not paid the debt, and was free from confinement on said judgment, when this suit was commenced, then this suit might be maintained and for the full amount of the draft, interest, costs of protest, and three per cent. interest on the amount for which the draft was drawn, as damages. The verdict was for the plaintiff, and the defendant filed exceptions.

*J. S. Abbott* argued for the defendant, and among other grounds contended, that the draft was given in payment of the bond, and that in accordance with the arrangement, the seals were torn off, and the bond cancelled, and no action could have been maintained upon it; and then the parties made a different arrangement whereby the defendant agreed to be defaulted in the action on the bond, and the plaintiff to give up the claim upon the draft. This they had a right to do, and this they did do by the agreement to dismiss the action on the draft. This agreement was sufficiently proved. The Attorney entering and having the care of the action, had authority to make the agreement. It was also proved by the witness, *Farley*. The bond was to be revived, and the draft extinguished. This was a matter of fact, which should have been decided by the jury, and not by the Court. Besides, the plaintiff paid nothing for the draft, and the action should be in favor of the *United States*, if any can be maintained.

*M. H. Smith*, for the plaintiff, argued in support of the ruling of the Judge of the C. C. Pleas. To show that the minutes on the docket were not evidence, had they been produced instead of a copy, he cited *Southgate* v. *Burnham*, 1 *Greenl.* 369. The paper was a mere agreement in another action, and is wholly irrelevant in this. It neither is or professes to be, if proved, a payment of the draft, but merely an engagement not to pursue that action further. But the statement of the defendant, as late as *November*,

1836, shows that the draft was due, and that it was not considered by the parties as paid. There is however no authority produced, authorizing the attorney in the action, to take from the plaintiff the right to maintain another action on the draft. If he had any special authority he might have been called to prove it.

The opinion of the Court was drawn up by

SHEPLEY J. — The bill appears to have been drawn by the defendant in favor of *Wheaton*, who indorsed it, and to have been delivered to the plaintiff, who was then collector of the customs for the district of *Waldoborough*, the consideration being the amount of a bond for duties due from the defendant to the *United States*. It was taken either in payment of the bond, or as security for it; and it is not perceived, that the rights of the parties to this suit would be varied whether it was taken for one purpose or the other; for if the bond was paid and extinguished, the bill would remain to be paid, and the same would be the result if taken as security. If the bond had been paid by it, the defendant might have successfully resisted the suit upon it, and the fact, that he admitted the bond to have been cancelled by mistake is very satisfactory proof, that he did not consider it paid. There is then no objection to the maintenance of this suit, unless it arises out of what took place after a former suit had been commenced upon the same bill.

It appears from the testimony of *Mr. Farley*, that *Cleland* brought a suit upon it, and while it was pending, took a written agreement signed by the defendant, which is not produced, but which is stated in the bill of exceptions to be, " that plaintiff agreed with defendant, that defendant should be defaulted on the bond and no farther proceedings be had on the draft." And the action was no further prosecuted. This agreement, signed by the defendant, was excluded because it did not appear that *Cleland* was authorized by the plaintiff to make such an agreement, and it does not appear that *Cleland's* testimony might not have been obtained to prove his authority, and that would have been the best evidence. But if the attorney commencing and prosecuting the suit should be regarded as having sufficient authority to make such an agreement, it could only be evidence in connexion with other testimony from

which an inference might be drawn, that the parties intended to cancel and discharge the bill; and any such inference would be repelled by the testimony of *Mr. Prince*, that in *November*, 1836, the defendant called upon him " to witness that said draft was justly due from him to *McCobb*, and that he would take no advantage of the statute of limitations."

It cannot be material to determine, whether the copy of the memorandum upon the docket was properly excluded or not for the testimony of *Mr. Farley*, admitted afterward, fully proved all that appeared upon the docket.

*Exceptions overruled.*